CATHERINE A. CONWAY (SBN 98366)
GREGORY W. KNOPP (SBN 237615)
ANASTASIA M. BOLES (SBN 224980)
CHRISTOPHER BLANCHARD (SBN 250729)
CHRISTOPHER K. PETERSEN (SBN 260631)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:  310-229-1000
Facsimile:  310-229-1001
cconway@akingump.com
gknopp@akingump.com
abolesakingump.com
cblanchard@akingump.com
cpetersen@akingump.com

ATTORNEYS FOR DEFENDANT ERNST & YOUNG LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELLE RICHARDS, on behalf of herself and all others similarly situated and on behalf of the general public,<br><br>         Plaintiffs,<br><br>    v.<br><br>ERNST & YOUNG LLP, and DOES 1 - 50,<br><br>         Defendants. | Case No. 08-cv-04988-JF (HRL)<br><br>[Assigned for all purposes to the Honorable Jeremy Fogel]<br><br>**DEFENDANT ERNST & YOUNG LLP'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MICHELLE RICHARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   December 4, 2009<br>Time:  9:00 a.m.<br>Dept.:  3 |

6396160

# **TABLE OF CONTENTS**

**Page No.**

I.   INTRODUCTION ........................................................................... 2

II.  STATEMENT OF UNDISPUTED FACTS ...................................... 4

    A.   Richards' Employment at Ernst & Young ............................. 4

    B.   Richards' Meal and Rest Breaks........................................... 4

    C.   This Lawsuit ......................................................................... 6

III. STANDARD OF REVIEW ............................................................ 8

IV.  ARGUMENT ................................................................................ 9

    A.   This Lawsuit Must Be Dismissed Because It Does Not Present An Actual Case Or Controversy. ............................................... 9

        1.   Richards Lacks Standing to Seek Injunctive Relief................ 10

        2.   Richards' Claims for Monetary Relief Are Moot ..................... 11

    B.   Richards' Meal and Rest Break Claims Fail as a Matter of Law. ...... 13

        1.   Richards' Meal Break Claim.................................................. 13

        2.   Richards' Rest Break Claim ................................................... 15

V.   CONCLUSION............................................................................ 17

DEFENDANT ERNST & YOUNG'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MICHELLE RICHARDS

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**FEDERAL CASES**

5

*Baas v. Dollar Tree Stores, Inc.*
    No. 07-03108, 2009 WL 1765759 (N.D. Cal. June 18, 2009) ........................... 10

6

7

*Baker v. Carr*
    369 U.S. 186 (1962)........................................................................................... 9

8

9

*Barnett v. Wash. Mut. Bank, FA*
    No. C 03-00753 CRB, 2004 WL 1753400 (N.D. Cal. Aug. 5, 2004) ............... 16

10

11

*Bodner v. Oreck Direct, LLC*
    No. 06-4756, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)............................. 13

12

13

*Brown v. Fed. Express Corp.*
    249 F.R.D. 580 (C.D. Cal. 2008)................................................................. 14, 16

14

15

*Burney III v. Woodford*
    No. 05-1849, 2009 WL 499052 (E.D. Cal. Feb. 26, 2009) ......................... 11, 12

16

17

*Clark v. City of Lakewood*
    259 F.3d 996 (9th Cir. 2001) ..................................................................... 10, 11

18

19

*Cornn v. United Parcel Serv., Inc.*
    No. C03-2001, 2005 WL 588431 (N.D. Cal. Mar. 14, 2005)............................ 16

20

*Dukes v. Wal-Mart, Inc.*
    509 F.3d 1168 (9th Cir. 2007) .......................................................................... 10

21

22

*Flittie v. Erickson*
    724 F.2d 80 (8th Cir. 1983) .............................................................................. 12

23

24

*Fortyune v. American Multi-Cinema, Inc.*
    364 F.3d 1075 (9th Cir. 2004) .......................................................................... 10

25

26

*Foster v. Carson*
    347 F.3d 742 (9th Cir. 2003) ..................................................................... 10, 11

27

28

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
    528 U.S. 167 (2000)........................................................................................... 10

DEFENDANT ERNST & YOUNG'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MICHELLE RICHARDS

*Gabriella v. Wells Fargo Fin., Inc.*
No. 06-4347, 2008 WL 3200190 (N.D. Cal. Aug. 4, 2008) ...................... 14, 16

*Gator.com Corp. v. L.L. Bean, Inc.*
398 F.3d 1125 (9th Cir. 2005) ................................................. 2, 9, 11

*Jackson v. California Dept. of Mental Health*
399 F.3d 1069 (9th Cir. 2005) ........................................................... 9

*Kenny v. Supercuts, Inc.*
252 F.R.D. 641 (N.D. Cal. 2008)...................................................... 14

*Kimoto v. McDonald's Corps.*
No. 06-3032, 2008 WL 4690536 (C.D. Cal. Aug. 19, 2008) ...................... 14, 15

*Lanzarone v. Guardsmark Holdings, Inc.*
No. 06-1136, 2006 WL 4393465 (C.D. Cal. Sept. 7, 2006).............................. 16

*Marlo v. United Parcel Serv., Inc.*
No. 03-04336, 2009 WL 1258491 (C.D. Cal. May 5, 2009).............................. 14

*Milligan v. American Airlines, Inc.*
No. 08-55276, 2009 WL 1154213 (9th Cir. Apr. 30, 2009)........................ 10, 11

*Parr v. Nat'l Restaurant and Lounge*
No. 06-00279, 2007 WL 142766 (D. Hawaii Jan. 16, 2007) ............................ 12

*Perez v. Safety-Kleen Sys., Inc.*
253 F.R.D. 508 (N.D. Cal. 2008)................................................... 14, 15

*Perine v. ABF Freight Systems, Inc.*
457 F. Supp. 2d 1004 (C.D. Cal. 2006) ............................................. 8, 9

*Salazar v. Avis Budget Group, Inc.*
251 F.R.D. 529 (S.D. Cal. 2008) ..................................................... 14

*Sanchez v. Wal Mart Stores, Inc.*
No. 2:06-cv-02573, 2009 WL 1514435 (E.D. Cal. May 28, 2009)................... 13

*Steel Co. v. Citizens for a Better Environment*
523 U.S. 83 (1998).................................................................. 9, 13

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*
517 U.S. 544 (1996)................................................................. 9, 14

*Walsh v. Nevada Dept. of Human Resources*
  471 F.3d 1033 (9th Cir. 2006) ............................................................. 10

*Watson-Smith v. Spherion Pac. Workforce, LLC*
  No. 07-5774, 2008 WL 5221084 (N.D. Cal. Dec. 12, 2008) ........................... 14

*White v. Starbucks Corp.*
  497 F. Supp. 2d 1080 (N.D. Cal. 2007)................................................ 14, 15, 16

*Wren v. RGIS Inventory Specialists*
  256 F.R.D. 180 (N.D. Cal. 2009)......................................................... 14

**CALIFORNIA STATUTES**

Cal. Lab. Code § 226.7(a) ................................................................. 13, 14

Cal. Lab. Code § 512(a) ................................................................... 13, 14

**OTHER AUTHORITIES**

DLSE Memo to Staff re Court Rulings on Meal Periods (Oct. 23, 2008).............. 15

DLSE Op. Letter, 1/28/02 .................................................................. 16

U.S. Const. Article III, § 2 ................................................................ 2, 9

Wage Order § 12(A)......................................................................... 15

DEFENDANT ERNST & YOUNG'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MICHELLE RICHARDS

1    TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on December 4, 2009, at 9:00 a.m. in Department

3    3 of the above-titled Court, located at 280 South 1st Street, San Jose, California 95113,

4    Defendant Ernst & Young LLP ("Ernst & Young") will and does hereby move for

5    summary judgment or, in the alternative, partial summary judgment as to the claims of

6    Plaintiff Michelle Richards ("Plaintiff" or "Richards").

7         1.    This lawsuit must be dismissed because it does not present an actual case

8    or controversy in that Plaintiff does not seek any remedy that could redress her alleged

9    injury.

10        2.    Plaintiff's claim that Ernst & Young failed to provide her meal breaks fails

11   because, based on Plaintiff's deposition testimony, Ernst & Young did provide meal

12   breaks.

13        3.    Plaintiff's claim that Ernst & Young failed to provide her rest breaks fails

14   because, based on Plaintiff's deposition testimony, Ernst & Young did provide rest

15   breaks.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

6396160

1

## I.   **INTRODUCTION**

"It is an inexorable command of the United States Constitution that the federal courts confine themselves to deciding actual cases and controversies." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128 (9th Cir. 2005). No live case or controversy exists—and the action must be dismissed—when, as here, the plaintiff's stake in the outcome is purely ideological.

Plaintiff Michelle Richards filed this lawsuit in 2008, asserting the same claims on behalf of the same putative class as alleged in a pending lawsuit that her own lawyers filed in 2005. Specifically, she claims that her former employer, Ernst & Young, improperly classified her as exempt from California's overtime and meal and rest break laws. When she filed her complaint, Richards requested injunctive relief concerning Ernst & Young's overtime and break practices, as well as monetary damages. However, Richards has since disavowed any interest in obtaining the only remedy that was potentially available to her.

*First*, Richards has no standing to seek an injunction. A plaintiff has standing to seek injunctive relief only if there exists an immediate threat of repeated injury. As the Ninth Circuit consistently holds, former employees—like Richards—lack standing to seek to enjoin their former employer's wage and hour practices because those practices no longer pose any conceivable threat to them.

*Second*, Richards' claims for monetary relief are moot. A claim has become moot, and thus must be dismissed, if the plaintiff no longer seeks a remedy that could redress the injury she alleges. That is precisely the scenario here. Although Richards requested monetary damages in her complaint, her subsequent deposition testimony proves that her only interest in pursuing this case is in obtaining injunctive relief, which she lacks standing to seek:

> Q:   What's your hope to achieve in this lawsuit?
> A:   I would hope that Ernst & Young would take a look at fairness in how they categorize employees, because I don't feel at this

|    |    |                                                                          |
|----|----|--------------------------------------------------------------------------|
|    |    | time that they do or at the time that I worked there that they did.      |
|    | Q: | Anything else?                                                           |
|    | A: | No.                                                                      |
|    | Q: | You don't hope to recover any money in connection with this lawsuit?     |
|    | A: | No.                                                                      |
|    | Q: | No interest in recovering money?                                        |
|    | A: | No.                                                                      |

(Declaration of Gregory Knopp ("Knopp Decl.") ¶ 2, Ex. A at 50:9-22.)  Following her deposition, Richards carefully reviewed her transcript, made changes to certain portions of it, and left untouched her testimony disavowing any interest in monetary relief. (*See* Knopp Decl. ¶3, Ex. B.)  In so doing, she further confirmed that her only stake in the outcome of this case is ideological—having Ernst & Young change practices that have absolutely no impact on her.

In short, because Richards no longer seeks the only remedy that could redress her alleged injury, her claims are moot and must be dismissed.  Indeed, permitting her to proceed with this action in the absence of an adequate personal stake in the outcome would undermine the very objectives of the standing doctrine, including ensuring fully informed decisions and preserving the court's resources.

While Richards' testimony renders her claims moot and requires judgment in Ernst & Young's favor, even if this case proceeds, her meal and rest break claims must be dismissed.  Under California law, an employer need only make breaks available to employees; it has no obligation to ensure that breaks are actually taken.  Accordingly, to prove a violation, Richards must show that Ernst & Young prohibited or prevented her from taking proper breaks.  Her deposition testimony precludes any such finding.  Thus, Richards testified that *she* decided whether, when, where, and for how long to take meal and rest breaks, and that nobody ever told her not to take a break.  Because Richards admittedly had the freedom to control her schedule, she cannot prove—as she must—that Ernst & Young denied her breaks.  Accordingly, even if this lawsuit is permitted to proceed, Richards' break claims must be dismissed.

3

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   Richards' Employment at Ernst & Young

Richards started working for Ernst & Young in August 2001.  (Knopp Decl. ¶ 2, Ex. A at 69:20-23.)  In October 2003, she became a financial managing associate ("FMA") in Ernst & Young's Finance department, where she supported the firm's client billing processes.[1]  (*Id.* at 77:17-21; 166:17-20.)  In February 2005, after obtaining a degree in business accounting, Richards transferred to Ernst & Young's Tax Minimization group, where she, *inter alia*, prepared tax returns for the firm's clients. (*Id.* at 183:24 – 184:1.)  Richards worked in the Tax Minimization group—first as a "staff" and then as a "senior"—until July 2007, when she resigned her employment. (*Id.* at 308:3-5.)

### B.   Richards' Meal and Rest Breaks

As an FMA, Richards typically worked an eight-hour workday.  (*Id.* at 83:1-3.) She was free to leave the office during the workday, for example, to walk outside or visit a coffee shop.  (*Id.* at 85:25 – 86:3; *Id.* at 86:24 – 87:2.)  In fact, Richards was permitted to take rest breaks as she saw fit:

> Q:   You were free to take a ten-minute break during the course of a day?
> A:   If I needed to.
> Q:   It was up to you whether to take a ten-minute break?
> A:   Yes.
> Q:   No one ever told you you couldn't?
> A:   Yes.  Nobody told me I could not.
> Q:   And you decided when to take a ten-minute break when you wanted to; correct?
> A:   Yes.
> Q:   Nobody ever told you when to take or not take a 10-minute break?

---

[1] Richards worked as a "finance assistant" prior to October 2003, but that period of time is not at issue in this lawsuit. (*Id.* at 72:16-19 [testifying that she does not claim that she should have been paid differently as a finance assistant; Knopp Decl. ¶ 4, Ex. C at ¶ 7 [defining putative class as including staffs, seniors, and FMAs—but not finance assistants—and as covering the period beginning in June 2004].)

1       A:    That is true.

2   (Knopp Decl. ¶ 2, Ex. A at 86:10-23.)

3       In addition to rest breaks, Ernst & Young provided Richards an hour-long lunch

4   break when she was an FMA. (*Id.* at 91:2-4 (Q: "And your lunch break was typically,

5   in fact, an hour? A: Yes."].) Richards was permitted to leave the office during her lunch

6   break, and she sometimes drove to a restaurant or "would eat at a park." (*Id.* at 90:12-

7   16.) Sometimes Richards chose to spend her lunch break in the office, but that was her

8   decision. (*Id.* at 90:17 – 91:1.) While Richards claims that she did not take a lunch

9   break some days, she admits that this, too, was her decision:

10      Q:    Did you ever decide to, on a day where you were very busy,

11                  decide to take a break and just stay a little later to get the work

12                  done?
    A:    Yes.

13      Q:    And you could make that decision, right?
    A:    Yes.

14      Q:    You were free to manage your time in that way?

15      A:    Yes.

16  (*Id.* at 93:1-9.) For example, Richards sometimes chose to skip her scheduled meal

17  break so that she could finish her work earlier and leave at her regular time. (*Id.* at

18  93:10-19.)

19      Likewise, Richards was free to take rest breaks and meal breaks when she worked

20  as a staff and senior in the Tax Minimization group. Specifically, Richards decided

21  whether, when, and for how long to take rest breaks:

22      Q:    And it was up to you whether to take a break; right?

23      A:    It was up to me to decide if I wanted a break, yes.
    Q:    And it was your decision as to when to take a break?

24      A:    Yes.

25      Q:    And it was your decision as to how long to take a break?
    A:    Yes.

26      Q:    Nobody ever told you you couldn't take a break?

27      A:    Nobody ever told me I could not take a break.
    Q:    You didn't need anybody's permission to take a break?

28

5

1    A:   No.

2    (*Id.* at 203:21 – 204:12.)  Moreover, Richards was free to leave the office to run errands

3    or take care of personal business as she pleased.  (*Id.* at 204:13-16 [Q:  "If you wanted

4    to take a break to run an errand, for example, you could do that and even if it meant

5    you'd have to work a little later?  A: Yes."]; *id.* at 201:20 – 202:5 [E.g., Q:  "You were

6    free to leave the office during the course of the day?  A: Yes."].)

7        Similarly, although Richards did not have a defined lunch hour as a staff and

8    senior, she was still free to decide whether, when, and for how long to take meal breaks:

9        Q:   It was up to you whether to take a lunch break?
10       A:   Yes.
         Q:   It was entirely up to you when to take a lunch break?
11       A:   Yes.
         Q:   It was entirely up to you as to how long you took a lunch
12            break?
13       A:   No.
14       Q:   Within reason?
         A:   Yes.
15

16   (*Id.* at 207:12-22.)  If ever Richards did not take a meal break, that was her decision:

17       Q:   And if you took a very short lunch break, that was because you
              decided to do that; right?
18       A:   Correct.
19       Q:   And if ever you had a day without a lunch break, that's because
              you decided not to have a lunch break; correct?
20       A:   Correct.

21   (*Id.* at 208:15-21.)

22       **C.    This Lawsuit**

23       In September 2005, long before Richards filed her lawsuit, David Ho, a former

24   Ernst & Young employee, filed a similar action challenging the firm's treatment of him

25   as exempt from California's overtime laws.  (Knopp Decl. ¶ 5, Ex. D at ¶ 16.)  Ho later

26   amended his complaint to add a claim for violation of California's meal and rest break

27   requirements.  (Knopp Decl. ¶ 6, Ex. E at ¶ 36.)  Ho brought these claims on behalf of a

28

6396160                                    6

1 putative class consisting of individuals who worked for Ernst & Young as staffs or

2 seniors in California. (*Id.* at ¶ 9.)

3   In July 2007, after taking Ho's deposition, Ernst & Young moved for summary

4 judgment. (*See* Knopp Decl. ¶ 7, Ex. F.) The Court granted the motion in March 2008.

5 (*See* Knopp Decl. ¶ 8, Ex. G.) The *Ho* lawsuit continued, however, because while the

6 summary judgment motion was pending, Ho filed an amended complaint adding three

7 new plaintiffs—Sarah Fernandez, John Maxton, and Nathan Lay. (*See* Knopp Decl. ¶ 6,

8 Ex. E at ¶¶ 4, 5.) Maxton and Lay then withdrew from the lawsuit after Ernst & Young

9 noticed their depositions. (*See* Knopp Decl. ¶ 9, Ex. H; Knopp Decl. ¶10, Ex. I.)

10   In January 2008, after Ernst & Young produced the putative class members'

11 contact information in discovery, Ho's counsel came into contact with Richards.

12 Specifically, they obtained a declaration from her in support of Ho's class claims.

13 (Knopp Decl. ¶ 11, Ex. J.) In the declaration, Richards explained that she "would

14 greatly prefer to see this case certified as a class action." (*Id.* at ¶ 1.) She further stated

15 that she would "seek to bring an individual lawsuit" against Ernst & Young "if class

16 certification is denied" in the *Ho* case. (*Id.*)

17   Five months later, before even moving for class certification in the *Ho* case, Ho's

18 counsel filed a new, nearly identical lawsuit on behalf of Richards. Like Ho, Richards

19 challenges Ernst & Young's treatment of her as exempt from California's overtime and

20 break laws. (Knopp Decl. ¶ 4, Ex. C at ¶¶ 17, 34.) Also like Ho, Richards purports to

21 represent staffs and seniors in California. (*Id.* at ¶ 7.)

22   Despite the substantial overlap between the longstanding *Ho* action and her own

23 lawsuit, Richards filed her action in state court. (*See id.* at p. 1.) Ernst & Young then

24 removed this action to federal court, transferred it to this district, and requested that it be

25 related to the *Ho* action. (*See* Knopp Decl. ¶ 12, Ex. K.) The parties then agreed that

26 the two cases would be consolidated for purposes of class proceedings. (*See id.*)

27   On July 23, 2009, Ernst & Young took Richards' deposition. (Knopp Decl. ¶ 2,

28 Ex. A at p. 2.) Although, in her complaint, Richards had requested both monetary and

6396160

7

injunctive relief (Knopp Decl. ¶ 4, Ex. C at ¶ 36), she testified at her deposition that she does not, in fact, seek to recover any money:

> Q: What's your hope to achieve in this lawsuit?
> A: I would hope that Ernst & Young would take a look at fairness in how they categorize employees, because I don't feel at this time that they do or at the time that I worked there that they did.
> Q: Anything else?
> A: No.
> Q: You don't hope to recover any money in connection with this lawsuit?
> A: No.
> Q: No interest in recovering money?
> A: No.

(Knopp Decl. ¶ 2, Ex. A at 50:9-22.)  After Ernst & Young's counsel finished questioning Richards, her own counsel asked her several questions, none of which concerned Richards' disavowal of her claim for monetary relief.  (*Id.* at 322 – 327.)

Following her deposition, Richards was given an opportunity to review the transcript and change her testimony as she saw fit.  (*See* Knopp Decl. ¶ 3, Ex. B.)  While Richards did, in fact, make a number of changes, she did not alter her testimony concerning her objectives in this lawsuit.  (*Id.*)

## III.   STANDARD OF REVIEW

"Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Perine v. ABF Freight Systems, Inc.*, 457 F. Supp. 2d 1004, 1010 (C.D. Cal. 2006). "The moving party bears the initial burden of establishing the absence of a genuine issue of material fact," which "may be met by 'showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

8

1   "Once the moving party has met its initial burden, Rule 56(e) requires the

2   nonmoving party to go beyond the pleadings and identify specific facts that show a

3   genuine issue for trial." *Perine*, 457 F. Supp. 2d at 1010 (citing *Celotex*, 477 U.S. at

4   323-24). "'A scintilla of evidence or evidence that is merely colorable or not

5   significantly probative does not present a genuine issue of material fact.'" *Id.* (quoting

6   *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000)). "Only genuine disputes –

7   where the evidence is such that a reasonable jury could return a verdict for the

8   nonmoving party – over facts that might affect the outcome of the suit under the

9   governing law will properly preclude the entry of summary judgment." *Id.*

10  ## IV.   ARGUMENT

11  ###   A.   This Lawsuit Must Be Dismissed Because It Does Not Present An Actual Case Or Controversy.

12  "It is an inexorable command of the United States Constitution that the federal

13  courts confine themselves to deciding actual cases and controversies." *Gator.com Corp.*

14  *v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128 (9th Cir. 2005); U.S. Const. art. III, § 2.  In

15  deciding whether a live case or controversy exists, courts look to, among other things,

16  the doctrines of standing and mootness. *Jackson v. California Dept. of Mental Health*,

17  399 F.3d 1069, 1071 (9th Cir. 2005).  These doctrines operate to prevent federal courts

18  from hearing cases in which a plaintiff has only an ideological stake in the outcome.

19  *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) (a

20  plaintiff's happiness or "psychic satisfaction" that laws are being enforced does not

21  suffice for standing).  By avoiding purely ideological disputes, courts conserve scarce

22  judicial resources; ensure that parties will vigorously pursue their theories of the case

23  and thus promote fully informed decisions; and ensure that the parties maintain an

24  adequate interest and will continue to vigorously pursue their positions over the entire

25  life of the case.  *See United Food and Commercial Workers Union Local 751 v. Brown*

26  *Group, Inc.*, 517 U.S. 544, 545 (1996); *Baker v. Carr*, 369 U.S. 186, 204 (1962)

27  (fundamental question of standing is: "Have the [litigants] alleged such a personal stake

28

1  in the outcome of the controversy so as to assure that concrete adverseness which

2  sharpens the presentation of the issues upon which the court so largely depends for

3  illumination…?"); *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003); Erwin

4  Chemerinsky, Federal Jurisdiction 45 (4th ed. 2003).

5      None of these purposes can be served here, and no live case or controversy exists,

6  because Richards' only stake in the outcome is purely ideological.

7                    1.    Richards Lacks Standing to Seek Injunctive Relief

8      A plaintiff must have standing with respect to each remedy she seeks. *Friends of*

9  *the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185

10  (2000).  Standing to seek injunctive relief requires, *inter alia*, that the plaintiff

11  demonstrate a "real and immediate threat of repeated injury." *Fortyune v. American*

12  *Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004); *see also Clark v. City of*

13  *Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001).  A plaintiff who is no longer threatened

14  by the conduct she wants enjoined has no standing to obtain injunctive relief.  *See id.*

15      Applying these standards, the Ninth Circuit consistently holds that *former*

16  employees, for whom employment practices necessarily pose "no real and immediate

17  threat," lack standing to seek injunctive relief to remedy alleged wage and hour

18  violations. *See Milligan v. American Airlines, Inc.*, No. 08-55276, 2009 WL 1154213 at

19  *1 (9th Cir. Apr. 30, 2009) (former employee lacks standing to seek injunctive relief

20  because she "cannot show that she faces a 'real or immediate threat of irreparable

21  injury' by [employer's] employment practices"); *see also Dukes v. Wal-Mart, Inc.*, 509

22  F.3d 1168, 1189 (9th Cir. 2007) (putative class members who are former employees lack

23  standing to seek injunctive relief because they would not stand to benefit from the

24  injunction); *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir.

25  2006) (former employee lacks standing to seek injunctive relief because "she would not

26  stand to benefit from an injunction" relating to employment policies); *Baas v. Dollar*

27  *Tree Stores, Inc.*, No. 07-03108, 2009 WL 1765759 at *3 (N.D. Cal. June 18, 2009)

28  (plaintiffs did not have standing to enjoin wage and hour violations because they no

6396160                                        10

1  longer worked for the employer).  Further, a plaintiff who is a former employee must

2  have standing in her own right even if she seeks to represent a class that includes current

3  employees.  *Clark*, 259 F.3d at 1007.

4      These cases preclude Richards' claim for injunctive relief.  Richards filed her

5  complaint almost a year after resigning her employment with Ernst & Young.  (Knopp

6  Decl. ¶ 4, Ex. C at p. 1; Knopp Decl. ¶ 2, Ex. A at 308:3-5.)  Because she no longer

7  works for Ernst & Young, the conduct she wants enjoined—practices concerning

8  overtime pay and breaks—poses no conceivable threat to her.  As a matter of law,

9  therefore, she lacks standing to seek an injunction.  *See, e.g., Milligan*, 2009 WL

10  1154213 at *1.

11                  2.   <u>Richards' Claims for Monetary Relief Are Moot</u>

12      "'Mootness can be characterized as the doctrine of standing set in a time frame:

13  The requisite personal interest that must exist at the commencement of the litigation

14  (standing) must continue throughout its existence (mootness).'"  *Foster*, 347 F.3d at 745

15  (quoting *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999)).  When

16  a case becomes moot, it must be dismissed because "its resolution is no longer within [a

17  federal court's] constitutional purview."  *Gator.com*, 398 F.3d at 1129.

18      A claim has become moot, and thus must be dismissed, if the plaintiff no longer

19  seeks a remedy that could redress the injury she alleges.  *See, e.g., Burney III v.*

20  *Woodford,* No. 05-1849, 2009 WL 499052 at *3 (E.D. Cal. Feb. 26, 2009)

21  (recommendation adopted in full by 2009 WL 800169 (E.D. Cal. Mar. 25, 2009).  In

22  *Burney*, a prisoner sued various state employees claiming that they had unlawfully

23  discriminated against him.  The plaintiff, like Richards, originally sought money

24  damages as well as injunctive relief.  *Id.*, *3.  During the course of the lawsuit, however,

25  the plaintiff—like Richards—indicated that "he 'is no longer seeking monetary

26  damages.'"  *Id.*  On that basis, the court ruled that "summary judgment should be

27  granted for all defendants on plaintiff's damages claim."  *Id.*  In addition, because the

28  plaintiff no longer resided at the prison in question, the court granted summary judgment

1   on plaintiff's claim for injunctive relief as against certain defendants who were "no

2   longer able to provide plaintiff with the relief he requests." *Id.*, *4. In short, because

3   the plaintiff could not obtain the injunction he sought and disavowed any interest in

4   recovering damages, his claims failed as a matter of law and were dismissed. *Id.*; *see*

5   *also Parr v. Nat'l Restaurant and Lounge*, No. 06-00279, 2007 WL 142766 at *1 (D.

6   Hawaii Jan. 16, 2007) (dismissing a claim for monetary damages after plaintiff

7   acknowledged that he had abandoned that claim).

8        The court reached a similar result in *Flittie v. Erickson*, 724 F.2d 80, 82 (8th Cir.

9   1983). There, a prisoner claimed that he had been unlawfully denied fair consideration

10  for parole. The court held that the plaintiff's claim for injunctive relief had become

11  moot because the relief he sought—a fair hearing—had actually occurred during the

12  pendency of the lawsuit. *Id.*, 81. Nevertheless, the plaintiff argued that his case could

13  proceed because, in addition to injunctive relief, "he [sought] an award of compensatory

14  and punitive damages." *Id.*, 82. The court rejected this argument because, although the

15  plaintiff had specifically requested money damages in his original complaint, he later

16  amended the complaint and requested "only that the court grant costs and 'such other

17  and further relief as the Court finds just.'" *Id.* Based on this amendment, the court held

18  that the plaintiff—like Richards—had "abandoned his request for damages . . . ." *Id.*

19  Because the plaintiff could not obtain an injunction and no longer sought damages, the

20  court remanded "with directions to dismiss the case as moot." *Id.*

21       Just as in *Burney* and *Flittie*, Richards' claim is moot because she no longer seeks

22  the only relief that could be afforded her. Although Richards originally filed a

23  complaint stating that she sought to recover monetary damages, her deposition

24  testimony makes it crystal clear that her only interest in pursuing this case is in

25  obtaining injunctive relief, which she lacks standing to seek. (Knopp Decl. ¶ 2, Ex. A at

26  50:9-22 [testifying that she has no interest in recovering money but rather only "would

27  hope that Ernst & Young would take a look at fairness in how they categorize

28  employees."].)

1    Following her deposition, Richards carefully reviewed her transcript, made changes to

2    certain portions of it, and left untouched her testimony disavowing any interest in

3    monetary relief.  (*See* Knopp Decl. ¶ 3, Ex. B.)  In so doing, she further confirmed that

4    her only stake in the outcome of this case is ideological—having Ernst & Young change

5    practices that have absolutely no impact on her.  This sort of "psychic satisfaction is not

6    an acceptable Article III remedy."  *Steel Co.*, 523 U.S. at 107 (dismissing claims where

7    the remedy sought would not redress the alleged injury and the plaintiff's satisfaction in

8    having laws enforced did not justify standing).

9         In short, because Richards no longer seeks monetary relief—the only remedy that

10   could redress her alleged injury—her claims are moot and must be dismissed.  Indeed,

11   permitting Richards to proceed absent an adequate personal stake in the outcome would

12   undermine the very objectives of the justiciability doctrines, including ensuring fully

13   informed decisions and preserving the court's resources.[2]

14        **B.     Richards' Meal and Rest Break Claims Fail as a Matter of Law.**

15        While Richards' testimony renders her claims moot and requires dismissal, even

16   if this case proceeds, her meal and rest break claims must be dismissed.

17             1.    Richards' Meal Break Claim

18        The California Labor Code states that "[a]n employer may not employ an

19   employee for a work period of more than five hours per day without ***providing*** the

20   employee with a meal period of not less than 30 minutes . . . ."  Cal. Lab. Code § 512(a)

21   (emphasis added); *see also* Cal. Lab. Code § 226.7(a) (an employer who "***fails to***

22

23   _____

24        [2] While Richards' counsel will no doubt argue that this case should proceed in spite of their
     client's purely ideological interest, only ***Richards'*** stake in the outcome is relevant to the standing
25   analysis.  Indeed, this Court has denounced "cart before the horse" class litigation in which the lawyer,
     rather than the plaintiff, is the "driving force" behind the action.  *See Bodner v. Oreck Direct, LLC*, No.
26   06-4756, 2007 WL 1223777 at *2 (N.D. Cal. Apr. 25, 2007) (refusing to certify a class where it was
     "clear from the record that plaintiff's counsel, and not the plaintiff, [was] the driving force behind this
27   action."); *see also Sanchez v. Wal Mart Stores, Inc.*, No. 2:06-cv-02573, 2009 WL 1514413 at *3 (E.D.
     Cal. May 28, 2009) (finding that a plaintiff was not adequate to represent a class in part because her
28   counsel's decision regarding which remedies to pursue was at odds with the plaintiff's professed
     interest.)

1   *provide*" an employee a due meal period must pay an additional hour of pay) (emphasis

2   added).

3          Consistent with the Labor Code's plain language, California District Courts have

4   consistently held that an employer need only provide meal breaks, not ensure that

5   employees actually take their breaks or "do any particular thing during that time."

6   *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 585-86 (C.D. Cal. 2008); *see also Marlo*

7   *v. United Parcel Serv., Inc.*, No. 03-04336, 2009 WL 1258491, at * 9 (C.D. Cal. May 5,

8   2009) ("The Court holds that [sections 512 and 226.7 of the Labor Code] require that

9   employers make a meal period *available* to employees, but place them under no further

10  obligations.") (emphasis in original); *Wren v. RGIS Inventory Specialists*, 256 F.R.D.

11  180, 208 (N.D. Cal. 2009) ("under California law an employer must offer meal breaks

12  but is not required to force employees to take them."); *Watson-Smith v. Spherion Pac.*

13  *Workforce, LLC*, No. 07-5774, 2008 WL 5221084, *3 (N.D. Cal. Dec. 12, 2008) ("The

14  Court . . . finds that employers have an obligation to *provide* meal breaks, but are not

15  strictly liable for any employee who fails to take a meal break, regardless of the

16  reason") (emphasis in original); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D.

17  Cal. 2008) ("the Labor Code . . . does not require an employer to ensure that an

18  employee take a meal break"); *Kimoto v. McDonald's Corps.*, No. 06-3032, 2008 WL

19  4690536, at *6 (C.D. Cal. Aug. 19, 2008) ("If the issue were before it, the California

20  Supreme Court would adopt [the provide not ensure]  construction of the meal and rest

21  period provisions."); *Gabriella v. Wells Fargo Fin., Inc.,* No. 06-4347, 2008 WL

22  3200190, at *3 (N.D. Cal. Aug. 4, 2008) (finding that the California Supreme Court

23  would agree that meal breaks need only be "'made available' and not 'ensured.'"); *Perez*

24  *v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (N.D. Cal. 2008) ("[W]hile employers

25  cannot impede, discourage or prohibit employees from taking meal breaks, they need

26  only make them available, not ensure they are taken."); *Salazar v. Avis Budget Group,*

27  *Inc.*, 251 F.R.D. 529, 533 (S.D. Cal. 2008) ("The Court agrees with the compelling

28  reasons advanced by the *White*, *Brown*, and *Kenny* decisions for interpreting 'provide' to

6396160                                          14

1  mean 'make available' rather than 'ensure taken.'"); *White v. Starbucks Corp.*, 497 F.

2  Supp. 2d 1080, 1088-89 (N.D. Cal. 2007) ("[T]he California Supreme Court . . . would

3  require only that an employer offer meal breaks, without forcing employers actively to

4  ensure that workers are taking these breaks").[3]

5      Richards' testimony precludes a finding that Ernst & Young "impede[d],

6  discourage[d] or prohibit[ed]" her from taking a proper break. *Perez*, 253 F.R.D. at 515.

7  As an FMA, Richards had a designated lunch hour, and she typically took an hour-long

8  break. (Knopp Decl. ¶ 2, Ex. A at 91:2-4 [Q: And your lunch break was typically, in

9  fact, an hour? A: Yes.].) She was free to leave the office and take her break where she

10  chose. (*Id.* at 90:2-19.) Further, while Richards claims that she sometimes skipped her

11  lunch break because she was busy with work, she admittedly was permitted to take the

12  break and stay later to complete her work—she could manage her time as she saw fit.

13  (*Id.* at 93:10-19.) Likewise, when Richards held the positions of staff and senior, she

14  decided whether, when, and for how long to take meal breaks (*Id.* at 207:15-22), and on

15  busy days, she had the option of taking a break and staying later to complete her work

16  (*Id.* at 208:15-21.) Because Richards admittedly had the freedom to take meal breaks as

17  she pleased, she cannot prove—as she must—that Ernst & Young denied her breaks.

18  Accordingly, her meal break claim fails as a matter of law. *See, e.g., White*, 497 F.

19  Supp. 2d at 1089 (granting defendant summary judgment on a meal break claim because

20  plaintiff admittedly made the decision to skip the breaks he had missed).

        2.    Richards' Rest Break Claim

22      As with meal breaks, California law requires only that employers "***authorize and***

23  ***permit*** all employees to take rest breaks . . . at the rate of ten (10) minutes net rest time

24  per four (4) hours or major fraction thereof." Wage Order § 12(A) (emphasis added);

25  *see also Kimoto*, 2008 WL 4690536, at *4, 6 (rest breaks need only be made available

---

[3] Likewise, the California Division of Labor Standards Enforcement ("DLSE") has stated that the most compelling interpretation of the Labor Code is that there is no duty to ensure that employees actually take their meal breaks. *See* DLSE Memorandum dated October 23, 2008 (Exhibit A to Appendix of Other Authorities).

and not ensured); *Gabriella*, 2008 WL 3200190, at *3 (finding that the California Supreme Court would agree that rest breaks need only be "'made available' and not 'ensured.'"); *Brown*, 249 F.R.D. at 585 ("[Employer] was required only to make meal breaks *and rest breaks* available to Plaintiffs . . .") (emphasis added); *White*, 497 F. Supp. 2d at 1085-86 ("the words 'authorize' and 'permit' only require that the employer make rest periods available."); *Lanzarone v. Guardsmark Holdings, Inc.*, No. 06-1136, 2006 WL 4393465, *6 (C.D. Cal. Sept. 7, 2006) ("Under California law, rest periods need only be authorized and permitted, they need not be enforced or actually taken."); *Cornn v. United Parcel Serv., Inc.*, No. C03-2001, 2005 WL 588431 at *2 (N.D. Cal. Mar. 14, 2005) ("The parties agree that California law requires employers to make rest periods available but does not require employers to ensure that rest periods are actually taken."); *Barnett v. Wash. Mut. Bank, FA,* No. C 03-00753 CRB, 2004 WL 1753400 at *2 (N.D. Cal. Aug. 5, 2004) ("Plaintiffs do not contend that defendants were required to ensure that plaintiffs take a rest period; rather, as the Wage Order provides, they were required to 'authorize' and 'permit' rest breaks.")  In fact, the DLSE has stated that "an employer is not subject to any sort of penalty or premium pay obligation if an employee who was truly authorized and permitted to take a rest break, as required under the applicable wage order, *freely chooses without any coercion or encouragement* to forego or waive a rest period."  DLSE Op. Letter, 1/28/02 (emphasis in original) (cited with approval in *White*, 497 F. Supp. 2d at 1085-86) (Exhibit B to Appendix of Other Authorities).

Richards' rest break claim fails under this standard.  As an FMA, staff, and senior, alike, Richards admittedly had the freedom to decide when, where, and for how long to take rest breaks, and nobody ever told her she could not take a break.  (Knopp Decl. ¶ 2, Ex. A at 85:25 – 86:3; 86:10-20; 86:24 – 87:2; 201:20 – 202:5; 203:21 – 204:16.)  These admissions definitively prove that rest breaks were available to Richards, which is all the law requires.  Accordingly, this claim, too, fails as a matter of law.  *See, e.g., White*,

DEFENDANT ERNST & YOUNG'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MICHELLE RICHARDS

1   497 F. Supp. 2d at 1086-87 (granting defendant summary judgment on rest break claim

2   because plaintiff admittedly was permitted to take rest breaks).

3   **V.**   **CONCLUSION**

4        For the reasons stated above, Ernst & Young's motion for summary judgment

5   should be granted.

6

7

8   Dated:  October 30, 2009

                          AKIN GUMP STRAUSS HAUER &

9                             FELD LLP

10                            By   /s/ Gregory W. Knopp

11                                     Gregory W. Knopp
                          Attorneys for Defendant ERNST & YOUNG

12                            LLP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

1                                 PROOF OF SERVICE

2        STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3              I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  2029 Century Park East, Suite 2400, Los Angeles, California 90067.  On October 30, 2009, I served the foregoing document(s) described as:  CAPTION on the interested party(ies) below, using the following means:

**All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the referenced case caption and number**

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

              I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

              Executed on October 30, 2009 at Los Angeles, California.

Rose Shushanyan                       /s/ Rose Shushanyan
Print Name                           Signature

6396160